**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TEXAS MEDICAL TECHNOLOGY INC. F/K/A TEXAS MEDICAL CENTER SUPPLY LLC, | § § § § | |
| Plaintiff, | § § | **Civil Action No. 4:22-cv-04254** |
| v. | § § | |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, A CHUBB COMPANY, AND CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SYNDICATE 2623 | § § § § § § | |
| Defendants. | | |

<u>**DEFENDANT CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SYNDICATE 2623'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Certain Underwriters at Lloyd's, London, Syndicate 2623 ("Beazley") files this Answer to the First Amended Complaint (the "Complaint").

**I.
PARTIES**

1.      Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 and therefore denies those allegations

2.      Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies those allegations

3.      Beazley admits the allegations in Paragraph 3.

## II.
## <u>JURISDICTION AND VENUE</u>

4.      The allegations contained in Paragraph 4 state a legal conclusion to which no response is required.

5.      The allegations contained in Paragraph 5 state a legal conclusion to which no response is required.

6.      The allegations contained in Paragraph 6 state a legal conclusion to which no response is required.

## III.
## <u>FACTUAL BACKGROUND</u>

7.      Beazley denies the allegations in Paragraph 7.

8.      Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 and therefore denies those allegations.

9.      Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 and therefore denies those allegations.

10.      Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 and therefore denies those allegations.

11.      Beazley responds that the FDA website speaks for itself, and Beazley lacks knowledge or information sufficient to conclude whether the excerpts quoted in this paragraph are a complete and accurate quotation from the website. To the extent there are any alterations or omissions in the alleged excerpts from the FDA website in Paragraph 11 including its sub-paragraphs, Beazley denies those allegations.

12.      Beazley responds that the American National Standards Institute document speaks for itself, and Beazley lacks knowledge or information sufficient to conclude whether the excerpts quoted in this paragraph are a complete and accurate quotation from the website. To the

extent there are any alterations or omissions in the alleged excerpts from the American National Standards Institute document in Paragraph 12 including its sub-paragraphs, Beazley denies those allegations.

13.     Beazley denies that failure to meet Level 3 specifications would render the gowns unsafe. Beazley also lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13 and therefore denies those allegations.

14.     Beazley responds that Chubb Recall Plus$^{TM}$ Consumer Goods Policy No. G71835832 001 (the "Primary Policy") speaks for itself.

15.     Beazley admits that TMT purchased Beazley Product Recall Excess Policy No. W2E47F210101 with a $2 million Limit of Insurance (the "Excess Policy").  Beazley denies the remaining allegations in Paragraph 15.

16.     On information and belief, Beazley admits the allegations in Paragraph 16.

17.     Beazley denies that there was a covered "insured event" under the Primary Policy or the Excess Policy. Beazley lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 17 and therefore denies those allegations.

18.     Beazley admits that Plaintiff first notified it of the DLA's contract termination on or about September 23, 2021. The remaining allegations of Paragraph 18 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley.

19.     Beazley admits that it confirmed receipt of Plaintiff's notice on September 29, 2021 and admits that it disclaimed coverage on October 14, 2021.  The remaining allegations of Paragraph 19 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley.

20.     Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 and therefore denies those allegations.

21.     Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 and therefore denies those allegations.

**IV.**
**APPLICABLE POLICY PROVISIONS**

22.     Beazley responds that the Primary Policy speaks for itself. To the extent there are any alterations or omissions in the alleged excerpts from the Primary Policy in Paragraph 22, Beazley denies those allegations.

23.     Beazley responds that the Primary Policy speaks for itself. To the extent there are any alterations or omissions in the alleged excerpts from the Primary Policy in Paragraph 23, Beazley denies those allegations.

24.     Beazley responds that the Beazley Policy speaks for itself.  To the extent there are any alterations or omissions in the alleged excerpts from the Beazley Policy in Paragraph 24, Beazley denies those allegations.

**V.**
**APPLICABLE CLAIMS**

**A.**     **TMT's Claim is an Insured Event:**

25.     Beazley denies the allegations in Paragraph 25.

26.     Beazley responds that the Primary Policy speaks for itself.  To the extent there are any alterations or omissions in the alleged excerpts from the Primary Policy in Paragraph 26, Beazley denies those allegations.

27.     Beazley denies the allegations in Paragraph 27.

28.     Beazley denies that there was a covered "insured event" under the Primary or Excess Policy.  Beazley further lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 and therefore denies those allegations.

29.     Beazley responds that the Primary Policy speaks for itself.  To the extent there are any alterations or omissions in the alleged excerpts from the Primary Policy in Paragraph 29, Beazley denies those allegations.

30.     Beazley denies the allegations in Paragraph 30.

31.     Beazley denies that there was a covered "insured event" under the Primary or Excess Policy.  To the extent a further response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 and therefore denies those allegations.

**B.      The Defective Level 3 Gowns are Unsafe:**

32.      The allegations in Paragraph 32 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley denies those allegations.

33.     The allegations in Paragraph 33 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley denies those allegations.

34.     Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 and therefore denies those allegations.

35.     Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 and therefore denies those allegations.

36.     Beazley denies the allegations in Paragraph 36.

37.     With respect to the first sentence in Paragraph 37, Beazley responds that the Primary Policy speaks for itself and is the best evidence of its contents.  Beazley denies the allegations in the second sentence of Paragraph 37.

38.     Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 38 and therefore denies those allegations. Beazley denies the second sentence of Paragraph 38.

39.     Beazley denies the first sentence of Paragraph 39.  The second sentence of Paragraph 39 pertains to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley denies those allegations.

40.     The allegations in Paragraph 40 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley denies those allegations.

41.     Beazley denies the allegations in Paragraph 41.

**VI.**
**CAUSES OF ACTION**

**A.      COUNT ONE: BREACH OF CONTRACT - CHUBB**

42.     In response to Paragraph 42, Beazley restates and incorporates by reference its answers to paragraphs 1 through 41.

43.     Beazley responds that the Primary Policy speaks for itself. The allegations in Paragraph 43 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 and therefore denies those allegations.

44.     Beazley responds that the Primary Policy speaks for itself. The allegations in Paragraph 44 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 and therefore denies those allegations.

45.     The allegations in Paragraph 45 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 and therefore denies those allegations.

46.     The allegations in Paragraph 46 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 and therefore denies those allegations.

47.     The allegations in Paragraph 47 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 and therefore denies those allegations.

48.     Beazley denies that there was a covered "insured event." The remaining allegations in Paragraph 48 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 and therefore denies those allegations.

49.      Beazley denies that there was a covered "insured event." The remaining allegations in Paragraph 49 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and therefore denies those allegations.

50.      The allegations in Paragraph 50 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 and therefore denies those allegations.

51.      The allegations in Paragraph 51 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51 and therefore denies those allegations.

52.      The allegations in Paragraph 52 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 and therefore denies those allegations.

53.      The allegations contained in Paragraph 53 state a legal conclusion to which no response is required. Further, the allegations in Paragraph 53 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 53.

54.      The allegations contained in Paragraph 54 state a legal conclusion to which no response is required. Further, the allegations in Paragraph 54 pertain to Plaintiff's claims against

a different Defendant and, therefore, no response is required from Beazley. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 54.

55.     The allegations contained in Paragraph 55 state a legal conclusion to which no response is required. Further, the allegations in Paragraph 55 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 55.

**B.      COUNT TWO: BREACH OF CONTRACT - BEAZLEY**

56.     In response to Paragraph 56, Beazley restates and incorporates by reference its answers to paragraphs 1 through 55.

57.     Beazley admits only that it entered into the Excess Policy with Plaintiff. Except as expressly admitted, Beazley denies the allegations in Paragraph 57.

58.     Beazley admits the allegations in Paragraph 58.

59.     Beazley denies the allegations in Paragraph 59.

60.     Beazley denies the allegations in Paragraph 60.

61.     Beazley denies the allegations in Paragraph 61.

62.     Beazley denies the allegations in Paragraph 62.

63.     Beazley denies the allegations in Paragraph 63.

64.     The allegations contained in Paragraph 64 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations in Paragraph 64.

65.     The allegations contained in Paragraph 65 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations in Paragraph 65.

C.    **COUNT THREE: CHAPTER 542 OF THE TEXAS INSURANCE CODE**

66.    In response to Paragraph 66, Beazley restates and incorporates by reference its answers to paragraphs 1 through 65.

67.    Beazley admits that § 542.003 of the Texas Insurance Code contains the quoted language.  To the extent a further response is required, Beazley denies the allegations in Paragraph 67.

68.    Beazley denies the allegations in Paragraph 68.

69.    Beazley denies the allegations in Paragraph 69.

70.    Beazley denies the allegations in Paragraph 70.

71.    The allegations contained in Paragraph 71 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations in Paragraph 71.

D.    **COUNT IV: ATTORNEY'S FEES**

72.    In response to Paragraph 72, Beazley restates and incorporates by reference its answers to paragraphs 1 through 71.

73.    The allegations in Paragraph 73 pertain to Plaintiff's claims against a different Defendant and, therefore, no response is required from Beazley. To the extent a response is required, Beazley lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73 and therefore denies those allegations.

74.    Beazley admits that it confirmed receipt of Plaintiff's notice on September 29, 2021 and admits that it disclaimed coverage on October 14, 2021. Beazley denies that any other claim for payment was ever made to Beazley before this suit was filed.

75.     The allegations contained in Paragraph 75 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations in Paragraph 75.

**E.     COUNT V: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (ALL DEFENDANTS)**

76.     In response to Paragraph 76, Beazley restates and incorporates by reference its answers to paragraphs 1 through 75.

77.     The allegations in Paragraph 77 state a legal conclusion to which no response is required.  To the extent a further response is required, Beazley denies the allegations in Paragraph 77.

78.     Beazley denies the allegations in Paragraph 78.

79.     Beazley denies the allegations in Paragraph 79.

80.     The allegations contained in Paragraph 80 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 80.

81.     Beazley denies the allegations contained in Paragraph 81.

**F.     NOTICE OF INTENT TO PURSUE A CLAIM UNDER CHAPTER 541 OF THE TEXAS INSURANCE CODE (ALL DEFENDANTS)**

82.     In response to Paragraph 82, Beazley restates and incorporates by reference its answers to paragraphs 1 through 81.

83.     The allegations contained in Paragraph 83 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 83.

84.     The allegations contained in Paragraph 84 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 84.

85.     Beazley denies the allegations in Paragraph 85.

86.     The allegations contained in Paragraph 86 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 86.

87.     The allegations contained in Paragraph 87 state a legal conclusion to which no response is required. To the extent a further response is required, Beazley denies the allegations contained in Paragraph 87.

## VII.
## JURY TRIAL DEMAND

88.     Paragraph 88 of the Complaint is a request for jury trial, which Beazley neither admits nor denies.

## VIII.
## PRAYER

Beazley denies Plaintiff's prayer for relief in its entirety.

## ADDITIONAL DEFENSES

Beazley asserts the following defenses to the claims asserted in the Complaint.  Beazley does not concede by including certain defenses herein that any particular burden of proof is assumed by Beazley:

1.     Plaintiff has failed to state a claim or cause of action against Beazley upon which relief can be granted;

2.     Beazley Product Recall Excess Policy No. W2E47F210101 (the "Excess Policy") requires that "[c]overage under this policy shall attach only after the **underlying insurers** have

fully exhausted the **underlying limits** by the actual payment of loss." Plaintiff's claims are barred

because the **underlying insurer**, Westchester, has not issued payment for this matter and thus, has

not "fully exhausted the **underlying limits** by the actual payment of loss."

      3.     The Excess Policy's "Maintenance of Underlying Coverage" provision provides:

> It is a condition of this policy that the **underlying coverage** shall be maintained in full effect during the **policy period** except for any reduction of the **underlying limits** solely by payment of any loss where the **underlying coverage** is written with an "Aggregate Limit of Liability." If this condition is breached then this policy shall automatically and immediately terminate with effect from the date when the **underlying coverage** ceases to be maintained or is deemed to have ceased to be maintained.

> In the event any **underlying insurer** fails to pay any loss as a result of the insolvency, bankruptcy or liquidation of such **underlying insurer**, then the **insured** shall be deemed self-insured for any amount of the limit of insurance of such **underlying insurer** which is not paid as a result of such insolvency, bankruptcy or liquidation.

      Here, Chubb Recall Plus$^{TM}$ Consumer Goods Policy No. G71835832 001 (the "Primary

Policy") expired on October 26, 2021. Accordingly, any coverage available under the Excess

Policy "automatically and immediately" terminated on that date.

      4.     The Insuring Agreement in the Primary Policy, to which the Excess Policy follows

form, states that:

> "Loss," to which this insurance applies, in excess of the applicable "self-insured retention" . . . up to the Limits of Insurance stated in the Declarations, that is caused by an "insured event" that is first discovered by you during the "policy period" and reported to us . . . .

Primary Policy, Section I.1. The Primary Policy defines "insured event" to mean:

> [A] voluntary, involuntary or mandatory recovery of "stock", market withdrawal or recall, of an "unsafe" "insured product(s)" by or on behalf of its manufacturer, producer, processor, distributor, purchaser, retailer, wholesaler, importer, exporter, a . . . regulatory or administrative body, or user of the "insured product(s)" provided that the use of or exposure to such "insured product(s)" has resulted in or would result in "bodily injury" or "property damage".

Primary Policy, Section II.F.

The Primary Policy defines "unsafe" to mean a "flaw, fault, imperfection, deficiency, hazard, defect, malfunction or inadequacy that creates a dangerous situation." Primary Policy, Section II.S.

Plaintiff's claims are barred because this matter does not involve an "insured event" because the Plaintiff has failed to demonstrate how the alleged "insured products" are "unsafe." "Level 2" gowns, as the "insured products" are allegedly properly classified, inherently cannot be "unsafe" because they serve a FDA-approved function – *i.e.*, "Level 2" gowns are safe "to be used, for example, during blood draw, suturing, in the Intensive Care Unit (ICU), or a pathology lab." *See* Complaint at ¶ 11.

Likewise, Plaintiff's broker, Amwins, also represented to Beazley that: "there was an incident in April of 2021. The insured sold some gowns to the U.S. government. The gowns were not defective and did not pose a safety threat, but they were out of spec. It was more of a quality issue and was not something that would trigger the policy."

5.     The Primary Policy, to which the Excess Policy follows form, defines "insured event" to mean, in relevant part, a "voluntary, involuntary or mandatory recovery of 'stock', market withdrawal or recall, of an 'unsafe' 'insured product(s)' . . . provided that use of or exposure . . . has resulted in or would result in 'bodily injury' . . .." Primary Policy, Section II.F.  Plaintiff's claims are barred because the "insured products" have not, nor would, result in "bodily injury" or "property damage."

6.     The Insuring Agreement in the Primary Policy, to which the Excess Policy follows form, requires "Loss" to be caused by an "insured event" that is first discovered by Plaintiff during the "policy period." Primary Policy, Section I.1. Here, the Primary Policy's "policy period" was

October 26, 2020 through October 26, 2021. The Excess Policy's policy period was March 4, 2021 through December 26, 2021. Plaintiff's claims that the product recall constitutes an "insured event" are barred because Plaintiff has failed to demonstrate that the recall, which began, at the earliest, on or about June 20, 2022, was "first discovered by Plaintiff during the 'policy period.'"

7.       "Loss" is defined in the Primary Policy, to which the Excess Policy follows form, as "'pre-incident costs' and 'recall costs', that you have incurred directly and solely in connection with a covered 'insured event.'" Primary Policy, Section II.H. Plaintiff's claims are barred in whole or in part due to Plaintiff's failure to sustain "Loss" as defined by the Primary Policy.

8.       The Excess Policy requires that "[f]or all loss, the **Insured** must provide written notice (in the same manner as required by the **primary policy**) to [Beazley] via the entity named in the declarations. Notice to any **underlying insurer** is not notice to [Beazley]." Condition R of the Primary Policy, to which the Excess Policy follows form, requires Plaintiff to, upon discovery of an "insured event" "within 72 hours or as soon as practical, contact the 24-hour hotline described in First Steps in A Crisis attached to the policy." Primary Policy, Section IV.R.  Plaintiff's claims are barred because, even if the defective gowns constitute an "insured event," Plaintiff failed to contact the 24-hotline within 72 hours or as soon as practical.  This late notice has prejudiced Beazley.

9.       Condition R of the Primary Policy also requires Plaintiff to:

provide written notice to us . . .  containing particulars sufficient to identify the "insured" and information with respect to the time, place and circumstances of the "insured event" and estimated "loss". SUCH WRITTEN NOTICE MUST BE PROVIDED AS SOON AS POSSIBLE BUT IN NO EVENT LATER THAN 30 DAYS AFTER DISCOVERY OF THE 'INSURED EVENT."

Primary Policy, Section IV.R.

Plaintiff's claims are barred because, even if the defective gowns constitute an "insured event," the surgical gown materials were first determined to be defective on January 14, 2021. Plaintiff further learned of the surgical gowns' failure to satisfy "Level 3" standards in April 2021 when the Defense Logistics Agency (the "DLA") notified Plaintiff that the surgical gowns did not meet certain criteria. Texas Medical delayed giving Beazley notice of the nonconformity until September 23, 2021 – significantly later than 30 days after discovery of the alleged "insured event."  This late notice has prejudiced Beazley.

10.     Exclusion B in the Primary Policy, to which the Excess Policy follows form, states that: "This insurance does not apply to any 'loss', cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . Any willful, wanton, fraudulent, illegal, malicious, dishonest or criminal act by any director, officer, member, partner or trustee of any 'insured.'" Primary Policy, Section III.B. Plaintiff's claims are barred to the extent that Plaintiff initiated the recall in a willful, wanton, fraudulent, illegal, malicious, dishonest, or criminal way.

11.     Exclusion C in the Primary Policy, to which the Excess Policy follows form, states that: "This insurance does not apply to any 'loss', cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . Any violation of a governmental regulation by any director, officer, partner or trustee of an 'insured' in connection with the manufacture, sale or distribution of any 'insured product(s).'" Primary Policy, Section III.C. Plaintiff's claims are barred to the extent its failure to provide conforming materials to the DLA was in violation of any government regulation.

12.     Exclusion H in the Primary Policy, to which the Excess Policy follows form, states that:

> This insurance does not apply to any "loss", cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . Any "insured event"

> that occurs after any of your directors, officers, partners or trustees has knowledge of (1) a defect or deviation in the production, preparation or manufacture of the "insured product(s)" or (2) of circumstances which have or are likely to result in such deviation or defect, and fails to take corrective action regarding such defect, deviation or circumstances."

Primary Policy, Section III.H. Plaintiff's claims are barred because, even if the nonconforming surgical gowns or the product recall constitutes an "insured event," Plaintiff and its directors, officers, partners, or trustees previously knew of the defect or deviation in the production, preparation, or manufacture of the surgical gowns.

13.     Exclusion I in the Primary Policy, to which the Excess Policy follows form, states that:

> This insurance does not apply to any "loss", cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . Any pre-existing condition, circumstance or situation which any of your directors, officers, partners or trustees knew of or should have known of, prior to the inception of this policy, that caused or could reasonably have been expected to cause, lead to or result in an "insured event."

Primary Policy, Section III.I.  Plaintiff's claims are barred under Exclusion I. because on January 14, 2021, prior to the Excess Policy's inception, the surgical gown material failed Hydrostatic Resistance Tests.

14.     Exclusion III.Q. in the Primary Policy, to which the Excess Policy follows form, states that: "This insurance does not apply to any 'loss', cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . The failure of any 'insured product(s)' to accomplish its intended purpose or to satisfy and express or implied warranty of fitness, efficiency or quality." Primary Policy, Section III.Q. Plaintiff's claims are barred because Plaintiff alleges that the surgical gowns failed to accomplish their intended purpose and were unfit for their intended use. *See* Complaint at ¶¶ 12-13, 38, 85.

15.     Exclusion R in the Primary Policy, to which the Excess Policy follows form, states that: "This insurance does not apply to any 'loss', cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: . . . Any 'insured product(s)' manufactured prior to the 'retroactive date'" – October 26, 2020. Primary Policy, Section III.R; Declarations. Plaintiff's claims are barred to the extent that any of the surgical gowns at issue were manufactured prior to October 26, 2020.

16.     Condition B of the Primary Policy, to which the Excess Policy follows form, provides that: "You may not assign this policy or any rights you may have under the policy without our written consent." Primary Policy, Section IV.A. To the extent Plaintiff has assigned any interest under the Primary or Excess Policy without Beazley's written consent, such assignment is not binding upon Beazley pursuant to Condition B.

17.     Condition D of the Primary Policy, to which the Excess Policy follows form, provides that:

> In the event of any covered "loss", you must provide to us a written request for payment as soon as practicable, accompanied by a computation of the "loss" setting forth in detail how the "loss" has been calculated and what assumptions have been made. You must provide to us any documentary evidence, including true copies of your books of account, bills, invoices, vouchers and other relevant documents that we or our representatives (including forensic accountants) may require. You must cooperate and afford our designates every assistance in their investigations, including reasonable access to any premises, personnel and documents we deem necessary for the purpose of the computation of "loss".
>
> We will determine the amount of any "loss", taking into account any savings or recoveries or offsetting or make-up of "loss" which you have made or could reasonably have been expected to make to mitigate the loss and expedite your ability to resume operations. . . ..

Primary Policy, Section IV.D. Plaintiff's claims are barred because Plaintiff failed to provide an adequate computation of the alleged "loss" or documentary evidence.

18.     Plaintiff's claims are barred by breach of Condition I of the Primary Policy, to which the Excess Policy follows form, and by the Application. Condition I provides that:

> [T]his policy will be null and void if any "insured" engages in concealment, misrepresentation, non-disclosure, or fraud with respect to any fact that is material to this insurance or the procurement thereof; the "insured product(s)", the "insured's" interest in the "insured product(s)", any "insured event", or any "loss" or claim under this policy.

Primary Policy, Section IV.I.  The Application provides that:

> The undersigned officer of the Applicant declares that: . . . He . . . will notify the insurer immediately in writing if he . . . discovers, between the date of this application and the effective date of the Policy issued on the basis of this Application, any significant adverse change in the condition of the Applicant or other knowledge which renders the information provided in this Application incomplete or inaccurate.

Plaintiff completed the Application on September 14, 2020. The Excess Policy incepted on March 4, 2021. Between those dates, at least two lots of Plaintiff's surgical gown material failed Hydrostatic Resistance Tests.

19.     Condition J of the Primary Policy, to which the Excess Policy follows form, requires Plaintiff to:

> agree to cooperate with us in all matters relating to this policy. This may include . . . providing information and documents, attending hearings and trials, securing and giving evidence, obtaining the attendance of witnesses, assisting in effecting settlements, and in conducting litigation, arbitration, or other proceedings.

Primary Policy, Section IV.J.  Plaintiff's claims are barred to the extent Plaintiff has failed to cooperate with Beazley.

20.     Condition K of the Primary Policy, to which the Excess Policy follows form, requires Plaintiff to "exercise due diligence to take all reasonable and practical steps to avoid any happening or circumstances giving rise to an 'insured event' and to make all reasonable efforts to mitigate any 'loss' occurring as a result of an 'insured event.'" Primary Policy, Section IV.K.

Plaintiff's claims are barred by Plaintiff's failure to mitigate its losses and exercise due diligence under Condition K.

21.     Condition M of the Primary Policy, to which the Excess Policy follows form, provides that if "any material fact concerning a claim, an 'insured event' or item of 'loss' is in any respect fraudulent or intentionally concealed or misrepresented, this policy will become void and you will not be entitled to any coverage or proceeds." Primary Policy, Section IV.M.  Plaintiff's claims are barred to the extent that it has fraudulently or intentionally concealed or misrepresented any material fact, including the date upon which Plaintiff first learned of the surgical gown material's defects.

22.     Condition T of the Primary Policy, to which the Excess Policy follows form, provides that:

> This insurance is excess of and will not contribute with any other insurance of any kind whatsoever, whether primary, excess, contingent or on any other basis, except such policies that are written specifically to apply in excess of this policy. Any other insurance available to you will not reduce or exhaust the "self-insured retention" or "co-insurance," which must be borne by you and remain uninsured.

Primary Policy, Section IV.T. Beazley may not be liable for Plaintiff's claim if there is other insurance applicable to that claim pursuant to Condition T.

23.     Condition X of the Primary Policy, to which the Excess Policy follows form, provides that:

> In the event of any payment under the policy, we will be subrogated to the extent of such payment to all the "insured's" rights of recovery. In such case, you agree to execute all documents required and will do everything necessary to secure and preserve such rights including the execution of such documents necessary to enable us to bring "suit" in your name."

Primary Policy, Section IV.X. Plaintiff's claims are barred to the extent that it has frustrated Beazley's subrogation rights.

24.    Condition Y of the Primary Policy, to which the Excess Policy follows form, provides that:

> No "suit", action, or proceeding for recovery of any "loss" under this policy will be sustainable in any court of law, equity, or other tribunal unless all the requirements of this policy are complied with and are commenced within 23 months after a final statement of "loss" has been submitted to us by you.

Primary Policy, Section IV.Y. Plaintiff's claims are barred because it has not complied with all requirements of the Primary Policy or Excess Policy prior to filing suit.

25.    Beazley's actions were taken in good faith and with a reasonable belief that all actions complied with the law.

26.    Plaintiff's claims are barred to the extent that Plaintiff knew and/or should have known of the damage at issue prior to the inception of the Policy or prior to shipping the product to its customers, or to the extent the insured seeks coverage for nonfortuitous or noncontingent events.

27.    Plaintiff's claims are barred to the extent that its expenses have been or will be reimbursed by a third party.

28.    Plaintiff's claims are barred, in whole or in part, to the extent there has been a failure to comply with the terms, conditions and/or other requirements contained in the Excess Policy and the Primary Policy, including but not limited to the failure to provide material documentation in cooperation with Beazley's investigation.

29.    Plaintiff's claims may be barred or limited by the doctrines of estoppel and/or waiver.

30.    Plaintiff is not entitled to recover based on the allegations in the operative Complaint to the extent that Plaintiff's claims are barred by the defense of unclean hands or laches.

31.     Plaintiff's claims are barred to the extent the payments for which it seeks reimbursement were unreasonable, excessive or voluntarily made.

32.     Plaintiff's claims are barred to the extent that Plaintiff incurred amounts that do not constitute insurable loss under applicable law.

33.     Plaintiff's request for punitive damages is barred because Beazley did not act with malice, oppression, or fraud in connection with Plaintiff's claims.

34.     Plaintiff's claims under Texas Insurance Code Section 541 are barred because, pursuant to Section G of the Primary Policy, New York law applies.

35.     Plaintiff's claims under Texas Insurance Code Section 542.003 are barred because, pursuant to Section G of the Primary Policy, New York law applies.

## RESERVATION OF RIGHTS TO AMEND

Beazley reserves the right to amend its answer in any way, including by adding affirmative defenses, counter-claims, cross-claims and/or third-party actions as necessary as additional facts are obtained through additional investigation and discovery.

## PRAYER FOR RELIEF

Having fully answered Plaintiff's Complaint, and stated its affirmative defenses, Beazley prays for relief as follows:

1.     That Plaintiff take nothing by reason of its Complaint and that all relief requested by Plaintiff be denied;

2.     That Beazley be awarded its costs and attorney fees incurred in this action as permitted by law; and

3.     That the Court award Beazley such other relief as it deems proper and just under the circumstances.

WHEREFORE, Defendant Beazley, respectfully requests the entry of an order denying all relief requested by Plaintiff Texas Medical Technology Inc. and such other relief as this Court deems just and appropriate.

Respectfully submitted,

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By:    /s/ Howard L. Close

    Howard L. Close
    State Bar No. 04406500
    Natasha N. Taylor
    State Bar No. 24071117
    Wright Close & Barger, LLP
    One Riverway, Suite 2200
    Houston, TX 77056
    Telephone: (713) 572-4321
    Facsimile: (713) 572-4320
    close@wrightclosebarger.com
    taylor@wrightclosebarger.com

    Kevin F. Kieffer (admitted pro hac vice)
    Troutman Pepper Hamilton Sanders LLP
    5 Park Plaza, Suite 1400
    Irvine, CA 92614
    Telephone: (949) 622-2708
    Facsimile:  (949) 622-2739
    kevin.kieffer@troutman.com

    Thomas S. Hay (admitted pro hac vice)
    Troutman Pepper Hamilton Sanders LLP
    501 Grant Street, Suite 300
    Union Trust Building
    Pittsburgh, PA 15219
    Telephone: (412) 454-5812
    Facsimile:  (412) 281-0717
    thomas.hay@troutman.com

    **ATTORNEYS FOR DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S, SYNDICATE 2623**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2023, a copy of the foregoing document was filed electronically through the Court's CM/ECF System, which automatically served all counsel of record with the same:

This 17th day of May, 2023.

/s/ *Howard L. Close*
Howard L. Close